## 49771. SHANNON v. KAYLOR et al.

WEBB, Judge.

Defendant Anna Shannon appeals from the verdict and judgment rendered against her in favor of plaintiff Karl Kaylor in a personal injury case arising out of a three-car collision. *Held:*

1. Enumeration of error 1 complains that "The trial court erred in overruling defendant's motion for mistrial after a police officer, called on behalf of the plaintiff, identified the defendant as 'the one giving probable cause to the accident,' no instruction having been given to the jury to disregard such testimony."

The record reveals that Officer Foster drew a diagram of the accident scene labeling the vehicle in which plaintiff was riding as a passenger as No. 1, and the other vehicles as No. 2 and No. 3. He testified that "From my report it indicates that the drivers stated that No. 2 vehicle had stopped to let No. 3 merge into traffic at that time." This testimony did not correspond with the numbering system on the diagram, and the trial court interrupted: "The court: Let me be sure I understand your numbering. Which is No. 1, 2 and 3? The witness: For our accident report we number the vehicles as we find them, starting with the one giving probable cause to the accident... The court: Well, just a moment. It doesn't make any difference about that. But which vehicle have you marked as No. 1, 2 and 3? The witness: Your Honor, No. 1 would be the '66 Plymouth, which would be this car here (defendant's vehicle), No. 2 is the '61 Oldsmobile and No. 3 would be the '65 Buick." The officer

then erased the label No. 1 from the vehicle in which plaintiff was riding and renumbered it as No. 2, and renumbered defendant's vehicle No. 1.

Forty-nine pages later in the transcript, after the officer had finished testifying and another witness was in the midst of his testimony, defendant moved for a mistrial, stating "And we take the position that the Court, by any instruction that it should give the jury, could not eradicate that from the jury's mind." During the colloquy the court expressed doubt that the jury had heard the "probable cause" remark, and the motion was subsequently overruled.

We thus have a situation where the witness made a spontaneous remark; the court interrupted, saying "Well, just a moment, it doesn't make any difference about that. But which vehicle have you marked as No. 1, 2 and 3?", a repetition of the court's initial question; counsel took the position that only a mistrial, and no lesser relief, would suffice; yet the matter which is contended to be so serious here did not prompt counsel to make an immediate objection or motion. Objection to the evidence not promptly made constitutes a waiver. *Cheney v. Bank of Bremen,* 25 Ga. App. 114 (1) (102 SE 903); *Trammell v. Shirley,* 38 Ga. App. 710, 716 (Rule 20) (145 SE 486). In these circumstances the trial court's discretion in overruling the motion will not be overturned unless the remark was so flagrantly prejudicial as to violate the fair trial rights of the defendant, and we are not prepared to so hold. Enumeration of error No. 1 is without merit.

2. At the trial defendant submitted a written request to charge as follows: "I charge you that when a witness shall be successfully contradicted as to a material matter, his credit as to other matters shall be for the jury, but if a witness shall swear wilfully and knowingly falsely, his testimony shall be disregarded entirely, unless corroborated by circumstances or other unimpeached evidence. The credit to be given his testimony where impeached for *general bad character* or for contradictory statements out of court shall be for the jury to determine." (Emphasis supplied.) The request was refused, and defendant enumerates this as error.

The requested charge is in the language of Code §

38-1806; and while the jury would have been authorized to find that plaintiff swore wilfully and knowingly falsely at the trial (see *Sutton v. State,* 18 Ga. App. 28 (3) (88 SE 744); *Pelham & Havana R. Co. v. Elliott,* 11 Ga. App. 621, 622 (1) (75 SE 1062)), there is nothing in the record to show that plaintiff was impeached for general bad character. "General bad character" does not mean character as to truthfulness of the witness' testimony. Green, Georgia Law of Evidence p. 344, § 138. In *Pelham,* supra, the credibility of the witness was attacked "by an attempt to show that his character is such that he is not worthy of belief [Code § 38-1804]," and the ruling there made with respect to charging § 38-1806 is not applicable here.

"A request must be correct, legal, apt, even perfect, and precisely adjusted to some principle involved in the case. If any portion of the request is inapt or incorrect, denial of the request is proper. If the request is directed to the whole of a Code section and a portion thereof is inapt or inapplicable, the request should be denied." *Slaughter v. Linder,* 122 Ga. App. 144 (2b) (176 SE2d 450). Since the "bad character" portion of § 38-1806 was inapt under the circumstances here, the court did not err in refusing the request to charge it verbatim. Enumeration of error No. 2 is without merit.

3. Enumeration of error 3 complains that "The trial court erred in permitting a medical witness to testify that the accident would have caused the conditions complained of, when such testimony was in response to a hypothetical question containing material assumptions of fact unsupported by any evidence and proven to be untrue." The facts referred to in this enumeration were disputed matters at trial, and there was some evidence, if believed by the jury, to support them. Defendant, however, asks us to believe her evidence only and to hold that these facts were untrue and disproved so as to render the expert medical opinion inadmissible. This we are unauthorized to do, as "The question of whether the [facts were] *proven* by the circumstances was one for the trier of fact. *Metropolitan Life Ins. Co. v. Saul,* 189 Ga. 1, 7-8 (5 SE2d 214); *Freeman v. State,* 190 Ga. 335, 337 (9 SE2d 236)." *Travelers Ins. Co. v. Hutchens,* 106 Ga. App. 631,

633 (127 SE2d 712). "The truth of the facts assumed by a hypothetical question is a question for the determination of the jury, and it must determine whether the basis upon which the hypothetical question rests has been established." 31 AmJur2d 560, Expert and Opinion Evidence, § 53. This enumeration is without merit.

4. Enumeration of error No. 4, complaining of the expert's opinion as to disability, raises the same issue as Enumeration 3 and is likewise without merit.

5. The trial court instructed the jury on the issue of negligence per se with respect to defendant. Defendant excepted to this charge, contending that the court should also have charged the principle of negligence per se as it applied to the other two drivers. This enumeration is without merit. There is no contention that, as to defendant, the charge was improper, but only that additional instructions should have been given with respect to the other drivers. "Under repeated rulings of this court, an otherwise correct and pertinent instruction is not rendered erroneous by the failure to charge in connection therewith some other correct and pertinent principle of law." *Hart v. State,* 227 Ga. 171, 174 (179 SE2d 346).

6. The verdict of $35,000 is not so excessive as to demonstrate bias, prejudice and caprice on the part of the jury. While defendant contended that many of plaintiff's complaints as to his health pre-dated the collision and did not result therefrom, the jury was authorized to conclude otherwise.

Defendant also urges that the verdict is far in excess of the most optimistic valuation placed on the case by the plaintiff, since on the second day of trial he had noted that the defendant's insurance coverage was limited to $10,000 and had offered to compromise the case for $7,500, which offer defendant rejected. There is no authority holding that such entitles defendant to a new trial.

7. Remaining enumerations fail to show harmful error requiring the grant of a new trial. CPA § 61 (Code Ann. § 81A-161).

*Judgment affirmed. Pannell, P. J., concurs. Evans, J., concurs specially.*

518

*Carter, Ansley, Smith & McLendon, H. Sanders Carter, Jr.,* for appellant.
*Parker, Groover, Pye & Ross, Lewis M. Groover, Jr., Durwood T. Pye,* for appellees.

EVANS, Judge, concurring specially.

As to enumeration of error number six (discussed in Division 5), it is urged by appellant that the trial judge erred in charging the jury that if they decided the defendant, Miss Shannon, violated the law of Georgia, this could constitute negligence per se. Defendant promptly objected *because this charge was not made to apply to the drivers of the other two automobiles involved.* At first blush, this objection would appear meritorious, as being argumentative, under Code § 81-1104.

It is true that defendant contended that McFail, driver of the Oldsmobile car in which plaintiff was seated, and Files, driver of a Buick automobile, committed negligence which caused the collision and that defendant Shannon was not at fault; and she filed a third party action against these two parties. But she dismissed her third party action as to McFail, and Files failed to answer and said third party action, as to him, was in default.

Therefore, defendant's objection to the charge upon the ground that the judge should have made the principle of negligence per se apply to these two third party defendants (one of whom appellant had voluntarily dismissed, and the other being in default) was not well taken, and there is no merit in this enumeration.

ON MOTION FOR REHEARING.

As to Division 2 of the opinion, it is urged on motion for rehearing that the record in *Pelham & Havana R. Co. v. Elliott,* 11 Ga. App. 621 (75 SE 1062) shows that there was no attempt to impeach the plaintiff for general bad character as provided for by Code § 38-1804; that the only

means by which the plaintiff was there sought to be impeached was by the introduction of his prior statements which contradicted his denial at trial of pre-existing difficulty with his back; and that *Pelham* therefore holds that general bad character may be shown by proof of prior contradictory statements and is indistinguishable from the present case, requiring reversal for failure to charge Code § 38-1806 verbatim.

If *Pelham* holds that general bad character may be shown by proof of prior contradictory statements, it cannot be followed. Code § 38-1804 quite explicitly sets forth the method by which general bad character may be shown: "A witness may be impeached by evidence as to his general bad character. The impeaching witness should be first asked as to his knowledge of the general character of the witness, and next as to what that character is, and lastly he may be asked if, from that character, he would believe him on his oath. The witness may be sustained by similar proof of character. The particular transactions, or the opinions of single individuals, shall not be inquired of on either side, except upon cross examination in seeking for the extent and foundation of the witness' knowledge."

Hence this section deals with the general reputation of the witness (Green, Georgia Law of Evidence, pp. 329, 343, §§ 133, 138) and cannot be equated with impeachment by prior contradictory statements, which is provided for by Code § 38-1803.[1] "The specification by the Code [§ 38-1804] of the nature of the questions to be asked impliedly excludes all other questions. Thus the inquiry is to concern *general* character, *not* character as to truthfulness [*Gordon v. Gilmore,* 141 Ga. 347 (7) (80 SE 1007)], veracity [*Calfee v. Jones,* 54 Ga. App. 481 (188 SE 307)] . . ." Green, supra at 344 (Emphasis supplied.) We expressly reject the contention made here that evidence as to prior contradictory statements offered to prove that the witness was swearing falsely at trial "inevitably creates an issue" as to general bad character. The two are

---

[1]"A witness may be impeached by contradictory statements previously made by him as to matters relevant to his testimony and to the case."

entirely different methods of impeachment provided for by separate Code sections.

"The court charged that a witness may be impeached by disproving the facts testified to by him, and by previous contradictory statements made by him of matters. relevant to his testimony and to the case. It is contended that the court also should have instructed the jury that a witness was impeachable as to his general bad character. There was no attempt to impeach any witness by proof of general bad character, and the court properly gave no instruction as to this mode of impeachment." *Devereaux v. State,* 140 Ga. 225, 227 (5) (78 SE 849).

To the extent that *Pelham* may conflict with these well-established principles, it will not be followed.

*Judgment adhered to.*